2022 WL 457843
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

UNISOURCE DISCOVERY, INC., Plaintiff,
v.
UNISOURCE DISCOVERY, LLC
and Steven A. Cerasale, Defendants.

Case No. 20-23276-CIV-GAYLES/OTAZO-REYES
|
Signed 01/10/2022

**Attorneys and Law Firms**

Diego Valdes, Diego David Valdes, P.A., Miami, FL, for Plaintiff.

Juan Carlos Zorrilla, Victor Mariano Velarde, Fowler White Burnett, P.A., Miami, FL, for Defendants.

### REPORT AND RECOMMENDATION

ALICIA M. OTAZO-REYES, UNITED STATES MAGISTRATE JUDGE

 *1  THIS CAUSE is before the Court upon Plaintiff Unisource Discovery, Inc.'s ("Plaintiff" or "Unisource Inc.") Amended Motion for Preliminary Injunction [D.E. 139]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 20]. The undersigned held an evidentiary hearing on this matter on December 9, 2021 (hereafter "Evidentiary Hearing") [D.E. 227]. Having considered the testimonial and documentary evidence presented at the Evidentiary Hearing and having conducted a thorough review of the parties' written submissions and the relevant legal authorities, the undersigned concludes that Plaintiff failed to meet its burden of demonstrating that it is entitled to the issuance of a preliminary injunction. Therefore, the undersigned respectfully recommends that the Amended Motion for Preliminary Injunction be DENIED.

### PROCEDURAL BACKGROUND

Plaintiff commenced this action on August 6, 2020, seeking injunctive relief and damages against Defendants Unisource Discovery, LLC ("Unisource LLC") and Steven A. Cerasale ("Cerasale") (collectively, "Defendants"). See Compl. [D.E. 1]. Plaintiff asserts the following claims against Defendants:

Count I: Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114(1).

Count II: False Designation or Origin and Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a).

Count III: Florida Common Law Trademark Infringement.

Count IV: Florida Common Law Unfair Competition.

Count V: Trademark Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

Count VI: Federal False Designation of Origin and False Advertising under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

Count VII: Common Law Trademark Infringement.

Count VIII: Common Law Unfair Competition.

Count IX: Deceptive Trade Practice under Fla. Stat. § 501.204.[1]

Count X: Misleading Advertising under Fla. Stat. § 817.41.[2]

[1] This count appears to be misnumbered.

[2] This count also appears to be misnumbered.

Id. Plaintiff predicates its claims on the use and trademark registration of the name "Unisource Discovery" (hereafter, "Unisource Name") and the following logo (hereafter, "Unisource Mark"):

**UNISOURCE**
DISCOVERY

DIGITAL DOCUMENT RETRIEVAL

See Amended Motion for Preliminary Injunction [D.E. 139 at 9–11]. Plaintiff contends that Defendants are unlawfully using and trading on the Unisource Name and the Unisource Mark in connection with the same goods and services as Plaintiff,

leading to actual confusion among the public and irreparable injury to Plaintiff. See id. at 1–2, 11, 14, 16–17. Plaintiff seeks a preliminary injunction that: prohibits Defendants from using the Unisource Mark; mandates Defendants to disclose to Plaintiff all information in their possession that is relevant to the business or affairs of Plaintiff; and mandates Defendants to cease all acts of poaching and converting Plaintiff's clients. Id. at 19–20.

## STANDARD OF REVIEW

"An injunction is an equitable remedy, available only when there is no adequate remedy at law." Weaver v. Florida Power & Light Co., 172 F.3d 771, 773 (11th Cir. 1999) (citing Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 (11th Cir. 1994)). A plaintiff seeking a preliminary injunction must demonstrate by a preponderance of the evidence that: (1) there is a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury exists if an injunction is not granted; (3) the threatened injury to the plaintiff outweighs any harm that an injunction may cause the defendants; and (4) issuing the injunction will not disserve the public interest. Levi Strauss & Co. v. Sunrise Int'l Trading, Inc., 51 F.3d 982, 985 (11th Cir. 1995). A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the "burden of persuasion" as to all four elements. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000). "The goal of a preliminary injunction is to prevent irreparable harm in order to preserve the district court's power to render a meaningful decision after a trial on the merits." Learning Experience Sys., LLC v. Foxborough Child Care, LLC, No. 10-80561-CIV, 2010 WL 3565712, at *4 (S.D. Fla. Aug. 19, 2010) (citing Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974)). See also Stokely-Van Camp, Inc. v. Coca-Cola Co., 646 F. Supp. 2d 510, 525 (S.D.N.Y. 2009) ("[A] preliminary injunction is a remedy that is directed toward preventing conduct during the pendency of the lawsuit.").

*2 The first element, substantial likelihood of success on the merits, is generally regarded as the most important because granting a motion for preliminary injunction would be inequitable if the movant does not have a chance of success on the merits. See Learning Experience, 2010 WL 3565712, at *4 (citing Butler v. Alabama Judicial Inquiry Comm'n, 111 F. Supp. 2d 1224, 1229-30 (M.D. Fla. 2000); Callaway, 489 F.2d at 572; Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000)). As to the second element, "irreparable harm, a movant must show that the injury cannot be undone through monetary remedies." Anago Franchising, Inc. v. CHMI, Inc., No. 09-60713-CIV, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009). Further, the irreparable injury claimed, "must be neither remote nor speculative, but actual and imminent." Id. (citing Siegel, 234 F.3d at 1176).

## FINDINGS OF FACT

The following individuals testified at the Evidentiary Hearing: Plaintiff's CEO and President, Noel Mijares (hereafter, "Mijares"); and Defendant Cerasale in his capacity as corporate representative for Unisource LLC. See Corrected Clerk's Exhibit and Witness List [D.E. 248]. The following documents were admitted into evidence: Plaintiff's Exhibits C, K, Q, and Defendants' Exhibit 8. Id.

### A. Mijares

1. In 2006, Mijares partnered with Cerasale to form Unisource Inc., a Florida-based document retrieval business specializing in legal research assistance.

2. On June 15, 2006, Mijares and Cerasale incorporated Unisource Inc.

3. When Unisource Inc. was first created, it was designed to operate as a branch of Unisource LLC by expanding the customer base of Unisource LLC beyond its original customer base in California.

4. Unisource Inc. used the Unisource Mark and the Unisource Name and software Cerasale had created for Unisource LLC.

5. However, Mijares and Cerasale agreed that Unisource LLC would continue using the Unisource Mark in connection with its business operations in California.

6. Mijares became CEO of Unisource Inc. and Cerasale became a fifty percent shareholder of Unisource Inc. and a member of its board of directors.

7. In 2008, Mijares submitted a trademark application with the United States Patent and Trademark Office ("USPTO") to register the Unisource Mark. See Defs.' Ex. 8. The owner of the Unisource Mark was listed as "Unisource Discovery" and the application stated that the Unisource Mark had been in use since at least March 2001, a date that is prior to the formation of Unisource Inc. Id.

8. On June 1, 2009, the USPTO accepted the trademark registration of the Unisource Mark under Section 8 of the Trademark Act, 15 U.S.C. § 1058. See Pl.'s Ex. C.

9. After registering the Unisource Mark, Mijares and Cerasale updated their jointly owned website, unisourcediscovery.com, to include the Unisource Mark.

10. In 2010, Mijares and Cerasale signed a revised, close corporation Shareholder Agreement to reflect that Plaintiff is the owner of the Unisource Mark. At that time, Cerasale's ownership interest in Plaintiff changed from 50% to 40%.

11. However, Unisource LLC continued using the Unisource Mark without objection from Unisource Inc., who did not seek a licensing agreement from Cerasale or Unisource LLC.

12. Plaintiff did not raise any objections to Unisource LLC's use of the Unisource Mark until 2020 following a falling out between Mijares and Cerasale.

13. In 2020, Mijares registered a separate website and domain for Unisource Inc. called unisourcediscovery.net and began using the Unisource Mark in connection with that website and domain.

*3 14. According to Mijares, starting in 2020, Defendants began poaching Plaintiff's customers and interfered with Plaintiff's business operations in Louisiana and Florida by portraying Plaintiff in a "negative light", "maliciously providing false information to purge" Plaintiff's clients and stealing orders from Plaintiff's clients. See Pl.'s Ex. K.

15. As a result, Mijares sent several cease-and-desist letters on behalf of Plaintiff to Defendants. See id.

16. Affidavits executed by Mijares and Plaintiff's Operations Manager Rudi Daka ("Daka") claim that, in 2021, Plaintiff began receiving calls and emails from Plaintiff's customers in Florida complaining that their orders for subpoenas had been lost because they had sent their orders to Unisource LLC in California rather than to Plaintiff. See Pl.'s Ex. Q. According to Mijares, Unisource LLC actively encouraged this arrangement, resulting in lost business for Plaintiff.

17. Plaintiff attempted to introduce Mijares' narrative reports of what he perceived as customer complaints as evidence in support of customer confusion; however, the undersigned sustained Defendants' hearsay objection and did not admit the report as evidence of confusion. See Pl.'s Ex. I (marked for identification), D.E. [222-9].

18. Mijares acknowledged that Cerasale had created the Unisource Mark and that he was aware of Defendants' use of the Unisoruce Mark through present day. However, Mijares believes that the revised 2010 close corporation Shareholder Agreement grants Plaintiff exclusive rights and ownership to the Unisource Mark.

**B. Cerasale**

19. In 2001, Cerasale formed Unisource LLC, a California-based document retrieval business, and created the Unisource Mark.

20. Unisource LLC has used the Unisource Mark and the Unisource Name in its business operations since 2001, prior to the formation of Unisource Inc.

21. In 2006, as part of his business agreement with Mijares, Cerasale gave Unisource Inc. access to the Unisource Mark, the Unisource Name, and the operating software he had created for Unisource LLC.

22. Defendants have continued using the Unisource Mark without objection or restriction from Plaintiff.

23. Defendants believe that the 2010 close corporation Shareholder Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff but merely gave Plaintiff the right to use them.

**C. Credibility**

24. The undersigned found Mijares' and Cerasale's recounting of the events leading up to the breakdown of their long business relationship to be consistent and credible.

25. Specifically, the undersigned finds credible and adopts both witnesses' testimony that, prior to the dispute, Defendants had continued to use the Unisource Mark without objection or restriction from Plaintiff.

26. However, at the Evidentiary Hearing, Mijares and Cerasale presented different views regarding the effect of the 2010 close corporation Shareholder Agreement.

27. Specifically, Mijares claimed that the 2010 close corporation Shareholder Agreement gave Plaintiff exclusive rights to use the Unisource Name and Unisource Mark.

28. By contrast, Cerasale claimed that the 2010 close corporation Shareholder Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff, but merely gave Plaintiff the right to use them.[3]

[3] The undersigned addresses this conflict below.

## CONCLUSIONS OF LAW

**\*4** As previously noted, for Plaintiff to prevail on its Amended Motion for Preliminary Injunction, it must show by a preponderance of the evidence: (1) a substantial likelihood of success on the merits; (2) irreparable harm; (3) balancing of the equities favors issuance of the injunction; and (4) the public interest will not be disserved. Levi Strauss, 51 F.3d at 985.

### A. Substantial likelihood of success on the merits

Plaintiff's request for preliminary injunctive relief is predicated on its claims for Florida and common law trademark infringement and unfair competition, which Plaintiff acknowledges must be examined in accordance with Lanham Act jurisprudence. See Amended Motion for Preliminary Injunction [D.E. 139 at 16]. To establish a prima facie case under the Lanham Act, a plaintiff must show that it had enforceable trademark rights in the mark and that the defendant made "unauthorized use of it such that consumers were likely to confuse the two." Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)).

Defendants contend that Plaintiff's registration of the Unisource Mark with the USPTO contained misrepresentations and is subject to cancellation. See Defs.' Opposition to Motion for Preliminary Injunction (hereafter, "Opposition") [D.E. 152 at 5-6]; Counterclaim [D.E. 166 at 22-24]. However, for purposes of this Report and Recommendation only, the undersigned will assume that Plaintiff has enforceable trademark rights in the Unisource Mark and proceed with the analyzing the second prong of the likelihood of success on the merits, namely, that Defendants made "unauthorized use of [the Unisource Mark] such that consumers were likely to confuse the two." Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997)).

In the Eleventh Circuit, likelihood of confusion is analyzed by considering the following seven factors: (1) the type of mark, specifically whether the mark qualifies as generic, descriptive, suggestive, or arbitrary; (2) the similarity of the marks based on their overall impressions; (3) the similarity of the goods; (4) the similarity of the parties' respective retail outlets, trade channels, and customers; (5) the similarity of types of advertising; (6) the intent of the defendant; and (7) actual confusion. Custom Mfg. & Eng'g, 508 F.3d at 648 (citing Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335-41 (11th Cir. 1999)).

### i. Type of mark

There are four types of marks: generic, descriptive, suggestive, and arbitrary. Frehling Enters., 192 F.3d at 1335. These marks are entitled to various levels of protection, with arbitrary marks being the strongest and entitled to the most protection, and generic marks being the weakest and not entitled to protection. Id.

Generic marks "refer to a class of which an individual service is a member (e.g. 'liquor store' used in connection with the sale of liquor)." Id.

Descriptive marks "describe a characteristic or quality of an article or service (e.g. 'vision center' denoting a place where glasses are sold)." Id. "If the mark is merely descriptive, such as a personal or surname, its strength depends on whether it has acquired secondary meaning." Tana v. Dantanna's, 611 F.3d 767, 776 (11th Cir. 2010). A mark has acquired secondary meaning when "the consuming public associates the services with a particular provider." Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 938 (11th Cir. 2010). To determine whether a descriptive mark has acquired a secondary meaning, a court looks to: "[t]he length and nature of the name's use;" "the nature and extent of advertising and promotion of the name;" "the efforts of the proprietor to promote a conscious connection between the name and the business;" and "the degree of actual recognition by the public that the name designates the proprietor's product or service." Tana, 611 F.3d at 776 (citing Welding Servs. Inc. v. Forman, 509 F.3d 1351,

1358 (11th Cir. 2007)). "A descriptive mark with secondary meaning is a relatively strong mark." Id.

**\*5** Suggestive marks "suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive. For instance, 'penguin' would be suggestive of refrigerators." Frehling Enters., 192 F.3d at 1335.

Arbitrary marks are "word[s] or phrase[s] that bear[ ] no relationship to the product (e.g. 'Sun Bank' is arbitrary when applied to banking services)." Id.

Plaintiff argues that the Unisource Mark is arbitrary because it does not suggest or describe the products or services offered thereunder. See Amended Motion for Preliminary Injunction [D.E. 139 at 15]. Defendants do not address this argument. Therefore, the undersigned accepts Plaintiff's contention that the Unisource Mark is arbitrary and entitled to the most protection, on the grounds that the term "Unisource Discovery" bears no relationship to providing digital document retrieval for the legal community. See Canes Bar & Grill of South Florida, Inc. v. Sandbar Bay, LLC, 343 F.Supp.3d 1236, 1243 (S.D. Fla. 2018) ("Similar to the way 'Sun Bank' was categorized as an arbitrary mark because 'Sun' bears no relationship to banking services, neither does 'Sandbar' bear any relationship to a sports bar and restaurant.").

*ii. Similarity of marks*

Similarity of appearance between two marks "is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Assoc., 651 F.2d 311, 318-19 (5th Cir. 1981); see also Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 502 (5th Cir. 1979) ("It is the overall impression that counts."); Frehling Enters., 192 F.3d at 1337 (In assessing similarity, "the court compares the marks and considers the overall impressions that the marks create, including the sounds, appearance, and manner in which they are used."). As explained by the United States Supreme Court, "The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." Estate of P.D. Beckwith, Inc. v. Comm'r of Patents, 252 U.S. 538, 545-46 (1920). In this case, Plaintiff and Defendants are using the same Unisource Mark.

*iii. Similarity of goods*

"Analyzing the similarity of the products the marks represent requires a determination as to whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." Caliber Auto., 605 F.3d at 939-40 (citing Frehling Enters., 192 F.3d at 1338). Here, the products offered by Plaintiff and Defendants are the same, namely, digital document retrieval and legal support services.

*iv. Similarity of retail outlets,
trade channels, and customers*

"The similarity of the parties' retail outlets and customers takes into consideration where, how, and to whom the parties' products are sold." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1339). Here, Plaintiff and Defendants service the same class of customers, namely, law firms; and use similar trade channels, namely, internet access, to render their services. Moreover, their respective domain names—"unisourcediscovery.com" and "unisourcediscovery.net"—are identical, except for different top level domains.

*v. Similarity of advertising media*

**\*6** "The similarity of advertising media factor looks to each party's method of advertising." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1339). There is no record evidence regarding what advertising media, if any, Plaintiff and Defendants use. Therefore, there is no basis for evaluating this factor.

*vi. Defendants' intent*

"When analyzing an alleged infringer's intent, [the court] must determine whether the defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation." Caliber Auto., 605 F.3d at 940 (citing Frehling Enters., 192 F.3d at 1340). In this case, Defendant Cerasale created the Unisource Mark in 2001 and started using it at that time in connection with the California-based company, Unisource LLC. In 2006, Cerasale and Mijares formed Unisource Inc. and Cerasale allowed Plaintiff

to begin using the Unisource Mark as part of their joint venture to expand the "Unisource Discovery" brand beyond California. Since that time: both Plaintiff and Defendants have used the Unisource Mark; Plaintiff has been aware of Defendants' use of the Unisource Mark; and Plaintiff has not restricted Defendants' ability to use the Unisource Mark or sought a licensing agreement from Unisource LLC or Cerasale to use the Unisource Mark. Although Plaintiff registered the Unisource Mark with the USPTO in 2009 and the Shareholder Agreement signed by Cerasale and Mijares in 2010 allowed Plaintiff to use the Unisource Mark, it did not in fact restrict Defendants use of the Unisource Mark. See Close Corporation Shareholder Agreement, Pl.'s Ex. 222-6; Defs.' Ex. 213-10. Thus, the undersigned rejects Mijares' claim that the 2010 close corporation Shareholder Agreement gave Plaintiff exclusive rights to use the Unisource Name and Unisource Mark and accepts Cerasale's claim that the 2010 close corporation Shareholder Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff, but merely gave Plaintiff the right to use them.

Based on the foregoing, it cannot be said that Defendants adopted the Unisource Mark with the intention of benefiting from Unisource Inc.'s reputation. Rather, Defendants continued to use the Unisource Mark for over a decade without objections from Plaintiff until 2020, following a falling out between Mijares and Cerasale.

### vii. Actual Confusion

At the Evidentiary Hearing, Plaintiff proffered Exhibit I as evidence of actual confusion. Exhibit I consist of a narration by Mijares of phone calls and emails received from Plaintiff's customers regarding lost subpoena orders and his conclusions that each instance evidenced customer poaching by Defendants and customer confusion. However, Defendants objected to the admission of Exhibit I based on hearsay and relevancy. Plaintiff conceded that the thrust of Exhibit I went to the issue of Defendants' allegedly poaching of Plaintiff's customers, which is not an issue in this case. To the extent that Exhibit I may have also been relevant, in some part, to the issue of actual confusion, Defendant's hearsay objection was sustained because it consisted of hearsay within hearsay. See, e.g., Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1559 (S.D. Fla. 1990) ("[T]he discredited first affidavit contains inadmissible double hearsay, in that an out-of-court declarant attests to the out-of-court statements of others. Such double hearsay is not admissible under the state of mind exception."); see also id. ("declarants may describe own state of mind regarding confusion in trademark case but, cannot describe another's state of mind") citing Programmed Tax Sys., Inc. v. Raytheon Co., 439 F. Supp. 1128, 1131 n.1 (S.D.N.Y. 1977).

**\*7** Moreover, the affidavits of Mijares and Daka, which were admitted without objection as Plaintiff's Exhibit Q [D.E. 222-17], also fail to show actual confusion. Both affidavits present narratives from Mijares and Daka of calls they received from a Florida-client regarding the client's report of a lost subpoena order that had been sent to Unisource LLC rather than Plaintiff. Although Daka and Mijares use the instance to conclude that Defendants are using "methods ... to mislead" Plaintiff's clients with the intent to cause "great confusion", Exhibit Q does not support these claims. See Pl.'s Ex. Q [D.E. 222-17]. Instead, Exhibit Q shows one instance in which a client accessed Unisource LLC's website and domain—unisourcediscovery.com—rather than Plaintiff's website and domain—unisourcediscovery.net—while placing its order for a subpoena, which ultimately resulted in mishandling of the client's order. However, Plaintiff and Unisource LLC had previously been operating under the same website (unisourcediscovery.com) up until 2020, shortly before the reported incident.

Therefore, Plaintiff failed to adduce evidence of actual confusion.

### viii. Analysis

Four factors (type of mark, similarity of marks, similarity of goods, and similarity of trade channels and customers) favor Plaintiff. One factor (similarity of advertising media) is neutral, since there is no record evidence regarding what advertising media, if any, Plaintiff and Defendants used. The remaining two factors (Defendants' intent and actual confusion) heavily favor Defendants.

With respect to Defendants' intent, the evidence shows that Cerasale created the Unisource Mark; that the 2020 close corporation Shareholders Agreement did not transfer ownership of the Unisource Mark or the Unisource Name to Plaintiff, but merely gave Plaintiff the right to use them: that Plaintiff did not object to Defendants' continued use of the Unisource Mark throughout the parties' long business relationship; and that Plaintiff never sought a licensing agreement from Defendants. Thus, Defendants did not intend

to derive a benefit from Plaintiff's business reputation; rather, the parties engaged in the joint use of the Unisource Mark for their mutual benefit.

Actual confusion is the strongest of the seven factors of likelihood of confusion. See Frehling Enters., 192 F.3d at 1335 (actual confusion is one of the most important factors in determine likelihood of confusion); Deltona Transformer Corp. v. Wal-Mart Stores, Inc., 115 F. Supp. 2d 1361, 1369 (M.D. Fla. 2000) ("Although evidence of actual confusion is not necessary to finding a likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion."). As discussed above, Plaintiff has failed to adduce evidence to support this factor.

Based on the foregoing analysis, Plaintiff has failed to establish by a preponderance of the evidence that it has a substantial likelihood of success on the merits. Nevertheless, in an abundance of caution, the undersigned will address the remaining three factors of the injunctive relief calculus.

**B. Irreparable harm**

To establish this element, Plaintiff must show that the injury it has sustained "cannot be undone through monetary remedies" and that such injury is "neither remote nor speculative, but actual and imminent." Anago Franchising, 2009 WL 5176548, at *11. Plaintiff has failed to provide any evidence that its alleged injury could not be remedied by money damages. At the Evidentiary Hearing, Plaintiff proffered Plaintiff's Exhibit J (hereafter, "Exhibit J"), "Verified Calculated Damages" [D.E. 222-10] to show the extent of losses from the Defendants' alleged trademark infringement. However, the undersigned sustained Defendants' objections based on relevancy because irreparable harm in support of a preliminary injunction cannot be quantified by dollar amounts. Thus, Plaintiff failed to establish irreparable harm.

**C. Balancing of the equities**

Given Plaintiff's failure to establish likelihood of success on the merits and irreparable harm, the harm to Plaintiff from the continued use of the Unisource Mark by Defendants does not outweigh the harm to Defendants from the proposed injunction.

**D. Public interest**

*8 "The public interest is served by eliminating confusion in the marketplace." Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, 703 F. Supp. 2d 1307, 1316 (S.D. Fla. 2010) (citing SunAmerica Corp. v. Sun Life Assurance Co. of Can., 77 F.3d, 1325, 1334 (11th Cir. 1996)). Because Plaintiff has not established that Defendants' use of Unisource Mark is likely to cause confusion among users of digital document retrieval services, requiring Defendants to cease using the Unisource Mark associated with their business would disserve the public interest.

**RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Plaintiff's Amended Motion for Preliminary Injunction [D.E. 139] be DENIED. The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Darrin P. Gayels, United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Miami, Florida this 10th day of January, 2022.

**All Citations**

Slip Copy, 2022 WL 457843